UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

CRAIG R. NAZZARO,

Debtor.

Case No. 810-74869-reg

Chapter 7
---------------------------------------------------------------x
TD BANK, N.A.,

Plaintiff,

- against -

CRAIG R. NAZZARO,

Defendant.

Adv. Proc. No. 810-8500-reg
---------------------------------------------------------------x

**MEMORANDUM DECISION**

This matter is before the Court pursuant to an adversary proceeding commenced by TD Bank, N.A. (the "Plaintiff") against Craig R. Nazzaro (the "Debtor") seeking, *inter alia*, to bar the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(2)(A), and/or to have the Debtor's obligation to the Plaintiff deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). The resolution of this adversary proceeding requires the Court to determine whether, when a debtor fails to disclose an asset in his petition, denial of the Debtor's discharge under Bankruptcy Code §§ 727(a)(4)(A) and/or (a)(2)(A) turns on a quantitative analysis of the omitted asset, or whether the failure to disclose an asset which may have little worth can be sufficient to bar a debtor's discharge . The Debtor's obligation to the Plaintiff arose as a result of the Debtor's guarantee of loans incurred by the Debtor's mortgage loan business. After the business defaulted , the Debtor was involved in the formation of a new company, capitalized with funds from third parties. The Debtor received an ownership interest in this new company. Within months of the

Plaintiff's commencement of an action against the mortgage loan business and the Debtor as guarantor, the Debtor transferred, for no consideration, his interest in the new company. The Debtor chose not to disclose the transfer of his interest in the new company in the petition. The Debtor argues that he never actually owned this interest and therefore did not have to disclose the transfer. The Debtor also claimed that the interest had little to no value, and any failure to disclose the transfer did not harm the creditors or the Debtor's estate in any meaningful way.

Based on the evidence provided at trial, including all of the documentary evidence, the Court finds that the Debtor's interest in the company had vested with the Debtor, the Debtor did in fact own the interest, and he transferred that interest to a third party for no consideration within several weeks prior to the filing of the Chapter 7 petition. Section 727(a)(4)(A) prohibits the granting of a discharge to a debtor who knowingly and fraudulently makes a false oath or account, which includes a false statement in the petition. While a debtor's discharge is not to be denied lightly, full disclosure by a debtor is critical in order to protect the integrity of the Bankruptcy process. The plain language of this section does not require multiple omissions or misstatements, nor does it require that the omitted transaction concern an asset of significant value. While a debtor is entitled to a fresh start, and inadvertent omissions should not result in the denial of a debtor's discharge, debtors act at their own peril when they knowingly fail to comply with the statute and make their own determination as to what is relevant or important enough to include in the petition. The Chapter 7 trustee and the creditors should not have to conduct their own investigation of the debtor's assets and prepetition activity, and have a right to rely on the accuracy of a debtor's petition and schedules. This statute is not ambiguous and clearly requires full disclosure by the debtor of all matters related to the disposition of the debtor's property.

Section 727(a)(2)(A), which bars the discharge of a debtor who transfers property within one year prior to the petition date with the intent to hinder, delay or defraud a creditor, does not require that the creditor be harmed by the transfer. In consideration of the circumstances surrounding the transfer, the Court finds that the Debtor transferred his interest in the new company with the intent to defraud or hinder his creditors. Based on these rulings, it is not necessary to rule on the dischargeability cause of action pursuant to § 523(a)(4).

## PROCEDURAL HISTORY

On June 24, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On September 14, 2010, the Plaintiff filed this complaint objecting to the discharge of the Debtor pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A), and objecting to the dischargeability of the Debtor's debts to the Plaintiff pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4). On November 29, 2010, the Debtor filed an answer to the complaint. On February 20, 2012, the Plaintiff filed a motion for summary judgment as to Counts One (§ 727(a)(2)(A)), Two (§ 727(a)(4)(A)) and Four (§523(a)(4)) of the complaint. Hearings on the Plaintiff's motion for summary judgment were held on April 18, 2012 and May 16, 2012. At the May 16, 2012 hearing, the Debtor, who had previously appeared through his counsel, appeared without counsel, and requested an opportunity to establish at trial that he never had a vested interest in the asset he allegedly failed to schedule in his petition. The motion for summary judgment was marked submitted.[1] On May 22, 2012, the Plaintiff and the Defendant filed a Joint Pretrial Memorandum. A trial was held on May 29, 2012 as to Counts One, Two

[1] In light of the fact that a trial has been held with respect to this adversary proceeding, the Plaintiff's motion for summary judgment is moot.

and Four.[2] On June 1 and June 5, 2012, the Plaintiff filed letters with the Court regarding the outstanding legal issues, and on June 12, 2012, the Debtor's counsel filed a post-trial memorandum. Thereafter, the adversary proceeding was marked submitted.

**FACTS**

In May 2002, the Debtor and Richard Doran formed a limited liability company known as Kensington Financial Services, LLC ("Kensington"), pursuant to the laws of Delaware. Although Kensington was no longer operating as of the Petition Date, the Debtor held a 45% membership interest in Kensington from 2002 through the Petition Date. Kensington commenced operations as a mortgage broker with offices in New Jersey, Garden City, New York, Warwick, New York and Florida. Kensington was not licensed as a mortgage lender, except in Florida. May 29, 2012 Trial Transcript ("Trial Tr."), p. 76. Despite the fact that Kensington was licensed to act as a mortgage lender, it never engaged in mortgage banking, and surrendered its Florida mortgage banking license in the second quarter of 2009. Trial Tr., p. 77. Kensington was not licensed to originate FHA loans. Trial Tr., p. 18 – 19.

In November 2007 and December 2007, TD Bank loaned $410,000.00 to Kensington, and was granted a security interest in all of Kensington's accounts, chattel papers, goods, inventory, equipment, fixtures, investment property, deposit accounts, documents, general intangibles and other collateral. The Debtor and Doran each executed an Unlimited Guaranty pursuant to which each personally guaranteed Kensington's indebtedness to TD Bank. Thereafter, Kensington defaulted on its obligations under the loan agreements and the Debtor and Doran defaulted under the guarantees. According to Doran's testimony, Kensington's

[2] The Court assumes that the Plaintiff withdrew Count Three prior to the trial, since the Plaintiff did not present any evidence in support of this Count at trial, and did not address Count Three in the Joint Pretrial Memorandum.

business was suffering due to adverse changes in the mortgage lending business and the economic downturn. By 2008, it became more difficult for mortgage brokers to thrive as a result of the dramatic decrease in the number of mortgage loans being made. Trial Tr., p. 18.

In April 2008, the Debtor and Doran became employed by Geneva Mortgage as mortgage brokers, and continued to work at Geneva Mortgage until December 2008. Unlike Kensington, Geneva Mortgage was licensed to originate FHA loans through the Department of Housing and Urban Development. Trial Tr., p. 19. Kensington ceased operations in early 2009. In 2009, the Debtor and Doran abandoned the physical assets of Kensington, including the office furniture and files to the landlords of Kensington's various leased premises. The leased premises in Garden City were returned to Geneva Mortgage, which utilized the space and office equipment formerly leased and utilized by Kensington. According to the testimony of Doran at trial, the Plaintiff was approached by members of Kensington and asked if the Plaintiff wanted to take the office equipment remaining at the premises. According to Doran's testimony at trial, the Plaintiff declined to take the equipment. Trial Tr., p. 17.

In February 2009, the Debtor and Doran were employed by Secured Lending Solutions, LLC as mortgage brokers until early summer 2009. In the spring of 2009, the Debtor and Doran were approached by James DiPiazza, who was a partner at Secured Lending Solutions, LLC, about infusing new capital into Kensington. Trial Tr., p. 11, 12. The Debtor and Doran were receptive to the inquiry, but the Debtor and Doran agreed that due to the debts owed by Kensington, it would not be prudent to recapitalize Kensington. Trial Tr., p. 15, 33. The Debtor and Doran also believed that recapitalizing Kensington, which only had a broker's license and was not licensed as a mortgage banker, would not be a good business decision. Trial Tr., p. 33.

In April 2009, Chris Dover, James DiPiazza, Doran and the Debtor formed Bond Street Mortgage, LLC ("Bond Street") to engage in the business of mortgage brokering and banking. Trial Tr. p. 9. Bond Street was capitalized in the amount of $800,000 with funds from Chris Dover. Trial Tr., p. 11. Bond Street obtained its license as a mortgage broker and banker from New Jersey in December 2009, and commenced operations in January 2010. Bond Street operated out of the same Garden City office from which Geneva Mortgage and Kensington operated. Trial Tr., p. 56-57.[3]

Pursuant to a Limited Liability Operating Agreement for Bond Street dated December 30, 2009 ("Bond Operating Agreement"), Dover, DiPiazza, Doran, Business Management Services LLC and the Debtor were equity members of Bond Street. The Debtor held the title and office of Chief Operations Officer of Bond Street. Doran and DiPiazza also served as officers of Bond Street. According to Schedule A of the Bond Operating Agreement, the Debtor received a 7.5% interest in Bond Street for services provided to Bond Street. Plaintiff's Ex. 8. Article 7.6 of the Bond Operating Agreement provides as follows:

> The Members agree that no Member may voluntarily withdraw from the Limited Liability Company without the affirmative vote or consent of Members holding a supermajority of the Members' Percentage Interests (other than the withdrawing Member).
>
> A member may, however, request voluntary withdrawal after all of the following conditions are met: (a) the Company has operated for 3 years or more, (b) annual net profits have been equal or greater than the member's capital contribution during the preceding 3 year period, (c) the member provides six (6) months written notice of the request and (d) a supermajority of members agree that the member's withdrawal will not adversely impact business operations. In the event of such voluntary withdrawal, the value of the member's ownership interest will be calculated and paid out using the formula outlined in 7.3, Table 1.

Plaintiff's Ex. 8.

[3] The relationship, if any, between the owners of Kensington and Geneva was never clarified.

While the Bond Operating Agreement contains language restricting each member, including the Debtor, from transferring his interest in Bond Street, it does not contain any terms which reflect that the Debtor's membership interest is contingent or did not vest as of December 30, 2009, the effective date of the Bond Operating Agreement. Article 8.2 of the Bond Operating Agreement further provides as follows:

> In the event of the sale or other disposition of all or substantially all of the Company's assets as decided by an affirmative vote of the supermajority of members, then a special distribution of 5% ownership interest shall be made to Rich Doran and Craig Nazzaro, with each receiving 2.5%. This distribution shall be made from the other members' shares in proportion of their respective ownership interest. The Company will not terminate or dissolve until all FHA-insured mortgages have been transferred to another approved mortgagee.

Plaintiff's Ex. 8. This provision appears to grant the Debtor an additional interest in Bond Street from certain other members in the event of a sale or disposition of the assets of Bond Street. Notwithstanding the language of the Bond Operating Agreement, the Debtor testified that he believed he had no vesting interest in Bond Street for the first three years after December 30, 2009, which he understood to mean as follows:

> It has no execution value. It means nothing to me until it is fully vested. I can't trade it, I can't borrow against it. I can't take any type of income from it before the three years and before the hurdles of sales, bondings to the company is achieved.

Trial Tr., p. 47.

According to the Debtor, he had no legal ownership interest in Bond Street, just a contingent right which did not ripen into a vested interest until certain requirements were met over three years from the date that Bond Street was formed.

DiPiazza testified that there were written riders to the Bond Operating Agreement providing that the Debtor's interest in Bond Street would not vest until certain financial hurdles

were met by the business. Trial Tr., p. 84. In support of this testimony, Piazza submitted documents to the Plaintiff post-trial, and the Plaintiff included them with their post-trial submission. The documents include a Resolution of the Members of Bond Street, dated December 30, 2009 ("Bond Street Resolution"). The Bond Street Resolution provides that "in the event the minimum hurdle of $500,000 net profit is not realized within the first 3 years of operations then the members have the right to revoke to [sic] interest of the officers 'in lieu of cash' service equity and it would be immediately returned to the company." The Debtor also submitted a financial statement from Bond Street as of December 31, 2010, which reflects that the Debtor claimed a 7.5% interest in Bond Street. The documents exchanged post-trial do not support the Debtor's contention that the Debtor's interest in Bond Street did not vest for the first three years of Bond Street's formation, or that the vesting was contingent upon some future event.

At trial, the Debtor testified that under the compensation scheme for Bond Street, 55% of the commissions generated from each loan made by Bond Street were divided into thirds, and the Debtor was entitled to receive a 1/3 share. The remaining 45% of the commissions were used to pay the expenses for Bond Street and for reinvestment into Bond Street. Trial Tr. P. 51, 52. According to the Debtor, he was not a "vested" owner, so he was not entitled to take any share of the 45% which was reinvested into Bond Street. Trial Tr., p. 53. The Debtor was also entitled to receive 1/3 of the amount equal to ten basis points of the total gross loan volume generated by Bond Street each month. Trial Tr., p. 55.

At the time Bond Street was formed, the Debtor remained a managing member of Kensington, which had ceased operations and was insolvent. On December 4, 2009, TD Bank

commenced an action against Kensington, the Debtor and Doran to collect on the notes and guarantees.

On April 23, 2010, the Debtor assigned his "complete vesting interest" in Bond Street to DiPiazza for no consideration.[4] The Debtor testified that when the transfer took place in April, 2010, he had approximately $200,000 in equity in his home. Trial Tr., p. 59. After he transferred his interest in Bond Street to DiPiazza, the Debtor remained as Chief Operating Officer, and he continued to be entitled to receive commissions based on the same formula until he resigned from Bond Street at the end of September, 2010. Trial Tr., p. 75.

On June 24, 2010 (the "Petition Date") the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. As of the Petition Date, the Debtor held no equity interest in Bond Street, and the only equity holders of Bond Street were Dover and DiPiazza. The transfer of the Debtor's ownership interest to DiPiazza, which took place within eight weeks of the Petition Date, was not disclosed in the Debtor's petition, schedules or statement of financial affairs. The Debtor disclosed his interest in Kensington, and valued his interest at zero. The Debtor failed to disclose the transfer of ownership interest in Bond Street in question number 10 of the Statement of Financial Affairs. The Debtor testified that he had disclosed his interest in Bond Street to his bankruptcy attorney. Trial Tr., p. 65. The Debtor also failed to disclose Bond Street as a business interest he held within the last three years, pursuant to question number 18 in the Statement of Financial Affairs. According to the Debtor, because his ownership interest never vested, he was not obligated to disclose his unvested interest in Bond Street as an asset. Trial Tr., p. 68. The Debtor also testified that he did not disclose the transfer because he believed his

[4] While the assignment agreement reflects that the Debtor's interest in Bond Street was transferred to DiPiazza, DiPiazza testified that the Debtor's shares were transferred back to Bond Street, and later 100% of the shares of Bond Street were redistributed between DiPiazza and Dover. Trial Tr., p. 90.

interest in Bond Street had no value to him as of the date of the transfer. Trial Tr., p. 67. Despite the fact that the asset had no value to the Debtor, the Debtor believed that the membership interest had value to Bond Street and could be offered to other investors. Trial Tr., p. 68.

## DISCUSSION

### 1. *Denial of Discharge under 11 U.S.C. 727*

It is well-settled law that the denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor. *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996). However, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor. *Congress Talcott Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994). The plaintiff bears the burden of establishing each of the elements of section 727 by a preponderance of the evidence. *See Minsky v. Silverstein* (*In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also* Fed. R. Bankr. P. 4005.

#### *a. Count 2 – denial of the Debtor's discharge under § 727(a)(4)(A)*

11 U.S.C. § 727(a)(4)(A) provides:

The court shall grant the debtor a discharge, unless –
(4) the debtor knowingly and fraudulently, in or in connection with the case –
(A) made a false oath or account.

Under this section, the Plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000).

The burden of showing actual fraudulent intent lies with the party objecting to the debtor's discharge. *Pergament v. Smorto* (*In re Smorto),* No. 07-CV-2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008). "Once the [plaintiff] has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation." *See Periera v. Gardner (In re Gardner)*, 384 B.R. 654, 662-63 (Bankr. S.D.N.Y. 2008) (citations omitted). "While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a *prima facie* case." *Palmer v. Downey* (*In re Downey),* 242 B.R. 5, 14, 15 (Bankr. D. Idaho. 1999) (other citations omitted).

"It is well established that a deliberate omission may constitute a false oath, and thus result in a denial of the discharge." *Crews v. Stevens (In re Stevens)*, 250 B.R. 750, 754 (Bankr. M.D. Fla. 2000) (citing *Raiford v. Abney (In re Raiford)*, 695 F.2d 521, 522 (11th Cir. 1983); and *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)). A materially false statement made or omitted as part of the bankruptcy petition, schedules, at an examination or during the proceeding itself may constitute a false statement under oath for purposes of § 727(a)(4)(A). *New World Restaurant Group, Inc. v. Abramov* (*In re Abramov)*, 329 B.R. 125 (E.D.N.Y. 2005).

The plain language of this statute provides that one single false oath or account is sufficient to deny a debtor's discharge. *Olympic Coast Investment, Inc. v. Wright (In re Wright),* 364 B.R. 51, 73 (Bankr D. Mont. 2007) (citing *Smith v. Grondin (In re Grondin*), 232 B.R. 274, 277 (1st Cir. BAP 1999), *Fogal Legware of Switzerland, Inc. v. Wills. (In re Wills*), 243 B.R. 58, 62 (9th Cir. BAP 1999), and *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)). It is crucial for

the successful administration of the estate that the debtor provide truthful information in connection with the bankruptcy case. *Dubrowsky v. Perlbinder* (*In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000). "[T]he very purpose of . . . § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction . . . ." *Boroff v. Tully* (*In re Tully*), 818 F.2d 106, 110 (1st Cir. 1987).

It is not enough under section 727(a)(4)(A) that a debtor is merely careless in the preparation of documents to be filed with Court, or in his testimony in connection with the case. The omission must rise to the level of showing fraudulent intent. *Painewebber, Inc. v. Gollomp* (*In re Gollomp)*, 198 B .R. 433, 437 (S.D.N.Y.1996). Fraudulent intent may be inferred from the circumstances of the case. *Sperling v. Hoflund* (*In re Hoflund)*, 163 B.R. 879, 882, 883 (Bankr. N.D. Fla. 1993). Such circumstances may include "inferences from the debtor's conduct, all surrounding circumstances, and the apparent course of conduct." *Palmer v. Downey*, 242 B.R. at 13 (other citations omitted). If a debtor is found to have exhibited a "reckless indifference to the truth," then that may be enough to establish fraudulent intent sufficient to deny the discharge. *See Diorio v. Kreisler-Borg Constr. (In re Diorio)*, 407 F.2d 1330 (2d Cir. 1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt . . . . Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud.") (citations omitted); *See also Perlbinder v. Dubrowsky*, 244 B.R. at 571-72.

Finally, the omissions and/or misstatements by a debtor must be material. However, "any matter bearing on the discovery of estate property or the disposition of the debtor's property is material for purposes of § 727(a)(4)(A)." *New World Restaurant Group, Inc. v. Abramov*, 329 B.R. at 134. The Court of Appeals for the Second Circuit has held that whether the inclusion of the assets would have increased the value of the debtor's estate is not determinative of whether the omission is material. *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974). "The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." *Chalik v. Moorefield*, 748 F.2d at 618 (citing *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d at 1330).

A debtor is obligated to disclose even worthless assets and unprofitable business transactions, as it is not for the debtor to determine whether the asset is relevant or important to disclose. The debtor is charged with answering the questions accurately and completely. *New World Restaurant Group, Inc. v. Abramov*, 329 B.R. at 134. Furthermore, there is no requirement that the omission cause direct financial prejudice to creditors. *Olympic Coast Investment, Inc. v. Wright 36*4 B.R. at 73 (citing *In re Weiner,* 208 B.R. 69, 72 (9th Cir. B.A.P. 1997), *rev'd on other grounds*, 161 F.3d 1216 (9th Cir. 1998) (other citations omitted)). An asset may be material even if it did not cause financial prejudice to the estate or creditors "if it aids in understanding the debtor's financial affairs and transactions." *In re Hoblitzell,* 223 B.R. 211, 215-16 (Bankr. E. D. Cal. 1998). For example, if the omission interferes with the ability to fully investigate potential preference or fraudulent conveyance actions, then the omission may be material. *Olympic Coast Investment, Inc. v. Wright* , 364 B.R. at 74.

"'Where persuasive evidence of a false statement under oath has been produced by a plaintiff, the burden shifts to the defendant to prove that it was not intentionally false. . . . Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel.'" *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 313 (Bankr. E. D. Pa. 2006) (quoting *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993)). A debtor's testimony at trial that he did not list certain property in his schedules because "in his mind" he did not own the property in question was "not worthy of belief." *Sergent v. Haverland (In re Haverland)*, 150 B.R. 768, 771 (Bankr. S.D. Cal. 1993). The debtor's unfounded belief that the asset had no value was insufficient as a defense to a claim under § 727 (a)(4)(A). *Id*. at 772.

In this case, the sole asset the Debtor is accused of failing to disclose is a 7.5% ownership interest in Bond Street, which the Debtor transferred to a third party for no consideration within weeks prior to the Petition Date. The Debtor does not dispute that he knowingly and consciously chose not to disclose the transaction in his petition, therefore the omission cannot be deemed unintentional. The Debtor claims that because he never had a vested interest in Bond Street there was no property transfer to disclose. The Debtor goes on to argue that even if he did have an interest in Bond Street, the ownership interest had no value.

In support of his argument that he never held a vested interest in Bond Street, the Debtor claimed at the hearing on the Plaintiff's motion for summary judgment that he had documentary evidence he wished to introduce at trial. At the scheduled trial, the Debtor relied on the Bond Operating Agreement to support his contention. However, the Bond Operating Agreement does not contain any language indicating that the Debtor's interest in Bond Street was a contingent

interest subject to meeting other requirements. In fact, the Bond Operating Agreement clearly states that the Debtor was granted a 7.5% interest in Bond Street, which interest would increase by an additional 2.5% if Bond Street was sold to a third party.

After the trial, the Debtor's witness, James DiPiazza, turned over additional documents to the Plaintiff, which the Plaintiff filed with the Court. The documents include a financial statement for Bond Street as of December 31, 2010, and a Resolution of the Members of Bond Street, dated December 30, 2009, reflecting that the Debtor was granted a 7.5% interest in Bond Street. The Resolution does not contain language reflecting that the grant is conditional or contingent. The Resolution also recites that profits would be distributed to all members in proportion to their ownership interest in Bond Street at the end of each quarter. The document entitled "Assignment of Ownership Interest" dated April 23, 2010, and executed by the Debtor reflects that the Debtor assigned his "complete vesting interest" in Bond Street to DiPiazza. (Plaintiff's Ex. 13).

In sum, the documentary evidence compels the Court to conclude that the Debtor had a vested ownership interest in Bond Street; an interest which he admits he transferred to James DiPiazza prepetition, and chose not to disclose in his petition. There is no evidence, documentary or otherwise, in the record to support the Debtor's alleged belief that his interest in Bond Street was contingent or subject to additional requirements. The Debtor's belief was completely unfounded and incompatible with the evidence submitted at trial. Even the document purporting to transfer the Debtor's interest refers to that interest as "vested." This begs the question of why the Debtor undertook the exercise of transferring something that he believed he did not own. Because the Debtor's explanation for failing to list the asset is so at odds with the evidence presented at trial, the Court finds that the Debtor's explanation lacks credibility.

Therefore, the Court concludes that the Debtor intentionally failed to list his vested interest in Bond Street.

While the value of the asset cannot be clearly ascertained from the documents submitted to the Court, it is undisputed that regardless of the actual value of the asset, the omission of the asset interfered with the investigation of the Debtor's business affairs. This failure to disclose the asset and its transfer deprived the Trustee and other creditors of the opportunity to examine whether the transfer should be avoided as a fraudulent conveyance, as the Debtor paid DiPiazza no consideration for the transfer, and the transfer most likely was made while the Debtor was insolvent. It is not for the Debtor to determine whether a business interest is of sufficient value to warrant disclosure. *Forrest and Stiebel v. Bressler* (*In re Bressler)*, 387 B.R. 446, 461 (Bankr. S.D.N.Y.) The Debtor's assertion that his attorney was aware of the transfer at the time the petition was prepared does not alter the Court's decision. For these reasons, the Debtor's discharge shall be denied pursuant to § 727(a)(4)(A).

***b. Count 1 - denial of the Debtor's discharge under 727(a)(2)(A)***

Under Count One of the complaint, the Plaintiff seeks to deny the Debtor's discharge on the grounds that the Debtor concealed a beneficial equity interest in Bond Street for the purpose of hindering, delaying or defrauding the Plaintiff and/or the Trustee, and to avoid the administration of this interest in the bankruptcy case. A party seeking to bar a debtor's discharge under § 727(a)(2)(A) of the Bankruptcy Code must show:

(a) an act, such as a transfer or concealment of property in which the debtor has a direct proprietary interest;
(b) the debtor's subjective intent to hinder, delay, or defraud a creditor or the bankruptcy trustee through such act, and
(c) that such act and the debtor's subjective intent occurred within the one year period preceding the filing of the bankruptcy petition.

*Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993).

According to the Plaintiff, the Debtor failed to disclose his beneficial equity interest in Bond Street with the intent to hinder, delay or defraud the Plaintiff and/or the Trustee, and to avoid the Trustee's administration of this beneficial interest in Bond Street. First, there must be a disposition of property of the debtor, and the transfer or concealment must take place within one year of the petition date. In addition, the transfer or concealment must have been done to hinder, delay or defraud a creditor or the bankruptcy trustee. As this Court has found, the Debtor transferred an asset of the estate within one year of the Petition Date. An examination of the circumstances surrounding the transfer support a finding that the transfer was made with the intent to hinder, delay or defraud the Trustee and the creditors.

Proving actual intent to defraud is difficult because a debtor is unlikely to admit to fraudulent intent. *Minsky v. Silverstein,* 151 B.R. at 660. As a result, courts have looked to objective events which are deemed "badges of fraud" in order to determine whether fraudulent intent exists. *New World Restaurant Group v. Abramov*, 329 B.R. at 131 (*citing Salomon v. Kaiser (In re Kaiser*), 722 F.2d 1574, 1582 (2d Cir. 1983) (other citations omitted).

These badges of fraud include:

1. the lack or inadequacy of consideration;
2. the family or other close relationship between the parties;
3. the retention by the transferor of possession, benefit or use of the property in question;
4. the financial condition of the transferor both before and after the transaction in question;

5. the existence or cumulative effect of a pattern or series of transactions or a course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
6. the general chronology of the events and transactions under inquiry.

*Solomon v. Kaiser*, 722 F.2d at 1582 – 83.

The evidence supports a finding that the Debtor's transfer of his interest in Bond Street was made with intent to defraud. The transfer was made for no consideration to another insider of Bond Street, and the transfer was made just prior to the Petition Date, within several months after the Plaintiff commenced its lawsuit. The transfer appears to be part of a scheme to insulate the Debtor from having to repay the Plaintiff in the event the Plaintiff obtained a judgment. The Debtor chose not to re-capitalize Kensington, which was indebted to the Plaintiff, and instead formed a new company with a capital infusion from a third party. While Bond Street provided a wider range of services, it was in a business similar to Kensington. After the Debtor transferred his interest in Bond Street, the Debtor remained employed at Bond Street with the same compensation scheme. According to the Debtor's petition, there was no equity in the Debtor's residence as of the Petition Date, and the Debtor had no other significant assets. Based on the circumstances surrounding the transaction and the badges of fraud inherent in the transfer, the Court finds that the transfer was made with the intent to defraud the Debtor's estate and his creditors.

As discussed above, the Debtor's excuse that he did not believe he owned the interest in Bond Street lacks credibility and is belied by all of the documentary evidence. His claim that the asset had no value does not absolve the Debtor of liability under § 727(a)(4)(A). The Court

believes that full disclosure by the Debtor is critical to the integrity of the bankruptcy process. A debtor who disregards these requirements does so at his risk. There is no requirement in this Circuit that the creditors be harmed by the Debtor's actions:

> Although some courts have held that the transfer of property in which the debtor lacks equity cannot constitute a fraudulent transfer, *see Discenza v. MacDonald (In re MacDonald*), 50 B.R. 255, 259 (Bankr. D. Mass. 1985); *Farmers Bank v. McCloud (In re McCloud)*, 7 B.R. 819, 822 (Bankr. M.D. Tenn. 1980), our Second Circuit Court of Appeals has held that "once the fraud be proved, it makes no difference that the creditors are not seriously injured." *Feynman v. Rosenthal (In re Feynman*), 77 F.2d 320, 322 (2d Cir. 1935); *see also Davis v. Davis (In re Davis*), 911 F.2d 560, 561 (11th Cir. 1990) (concluding injury to creditors irrelevant when deciding a section 727(a) complaint); *First Beverly Bank v. Adeeb (In re Adeeb*), 787 F.2d 1339, 1343 (9th Cir. 1986) (same).

*In re Kablaoui*, 196 B.R. 705, 710 (Bankr. S.D.N.Y. 1996).

In sum, the Plaintiff has successfully established each element of § 727(a)(2)(A), and the Debtor has failed to show that he lacked intent to defraud the creditors. Therefore, the Court finds in favor of the Plaintiff on Count One of the Complaint.

***2. Dischargeability of debt pursuant to 11 U.S.C. § 523(a)(4)***

Having determined that the Debtor's discharge should be denied pursuant to Counts 1 and 2 of the complaint, the Court shall not rule on the fourth count of the complaint pursuant to Section 523(a)(4).

## CONCLUSION

For the foregoing reasons, judgment is granted in favor of the Plaintiff as to §§ 727(a)(2)(A) and (a)(4)(A), and the Debtor's discharge is denied. The Court shall enter judgment consistent with this Memorandum Decision forthwith.

Dated: Central Islip, New York
January 14, 2013

By: ***/s/ Robert E. Grossman***
Robert E. Grossman
United States Bankruptcy Judge